J-A22033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SILVIA SANTO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD BATTERMAN | : | |
| | : | |
| Appellant | : | No. 409 EDA 2025 |

Appeal from the Order Entered January 14, 2025
In the Court of Common Pleas of Bucks County Domestic Relations at
No(s): 2024DR00154

BEFORE:  LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED DECEMBER 8, 2025**

Appellant, Chad Batterman, appeals *pro se* from the January 14, 2025, Order entered by the Honorable James M. McMaster in the Court of Common Pleas of Bucks County denying Appellant's petitions to reinstate his passport, to lift a non-disbursement order, and to proceed *in forma pauperis* and denying Appellant's oral motion for recusal of the Honorable Judge McMaster. After careful review, we affirm.

This appeal arises from an ongoing support matter which was initiated in the Philadelphia County Court of Common Pleas. Relevant to the instant appeal, on September 25, 2023, Appellant at that time having substantial arrearages in missed support payments, a non-disbursement order was entered by the Honorable Judge Margaret T. Murphy of said court, directing

_____

[*] Former Justice specially assigned to the Superior Court.

certain settlement proceeds relative to a personal injury claim which were owed to Appellant to be held in escrow "pending resolution of [Appellant's] child support matter," and further instructing that "no funds may be distributed to [Appellant] without further specific order of [that] Court." Trial Court Opinion 4/4/2025, Exhibit A.

The Honorable Judge McMaster sets forth the subsequent factual and procedural history as follows:

> Through an Order dated April 25, 2024, [the Court of Common Pleas of Bucks County] registered the Foreign Support Order Number 17-01602 issued by the Philadelphia County Court effective August 23, 2023, which directed Father to pay $674.48 per month for the children, with arrears of $28,575.23 at that time.
>
> On June 20, 2024, a Petition for Contempt was filed against Father. As of that date arrears totaled $29,924.19.
>
> Father filed a modification petition on August 2, 2024.
>
> Father filed one of his petitions for *In Forma Pauperis* on November 7, 2024.
>
> Father filed his first appeal on December 5, 2024, from the Order dated November 18, 2024, in which this Court denied Father's Petition for Modification of Support and denied the *In Forma Pauperis* Petition[1]. The Order also directed the Bucks County Domestic Relations Section to issue an Order for the Release of Information from the Law Firm of Leonard Sciolla and Zurich American Institute Insurance Company for information regarding lawsuits and settlement proceeds on behalf of or made available to Father.

---

[1] *Affirmed* by this Court. **Santo v. Batterman**, 3258 EDA 2024, 341 A.3d 117 (Pa. Super. filed May 21, 2025)

> On December 16, 2024, Father filed a Petition for Special Relief to Reinstate Passport and Petition for Special Relief to Immediately Lift Non-Disbursement Order from September 25, 2023.
>
> Father's second appeal was filed December 16, 2024, from an Order dated December 6, 2024 in which this Court found Father in contempt for willfully failing to pay the court ordered amount while having the financial ability to pay. Father was remanded to Bucks County Correctional Facility for six months effective December 6, 2024 with a purge amount of $25,000.00, which was immediately paid.

Trial Court Opinion 4/4/25 at 1-3.

On January 13, 2025, the lower Court presided over a hearing addressing Appellant's petitions to reinstate his passport and to lift the non-disbursement order, as well as his serial petition to proceed *In forma Pauperis* filed that same day. At that hearing, Appellant testified that the $25,000.00 purge amount relative to the December 6, 2024, order finding Appellant in contempt was not paid by Appellant himself but rather by Appellant's mother and grandmother. N.T. Hearing 1/13/2025, at 7-9. Further, Appellant testified that his family anticipated repayment from the funds held in escrow pursuant to the non-disbursement order once those funds were made available to Appellant. N.T. Hearing 1/13/2025, at 7-9. However, the trial Court did not find Appellant to be credible. *Id.* at 28. Further, at the time of the January 13, 2025, hearing, Appellant's child support for January of 2025 had been charged, and as of that time "those arrears [were] outstanding," in addition to $9,634.99 in support obligations still in arrears, not having been satisfied by the $25,000.00 purge amount. *Id.* at 6, 24.

Regarding the settlement funds subject to the non-disbursement order, counsel representing Bucks County Domestic Relations suggested during the January 13, 2025, hearing that the settlement funds should be disbursed to Domestic Relations to be held by the agency in escrow, in anticipation of future non-payment of child support. *Id.* at 25. However, the lower Court entered no order to that effect; rather, the Court explained to Appellant that "if the child support system files to have [the funds] disbursed based on the arrears, then [the Court will] entertain that Order when and if that petition is filed," and further the lower Court clarified that it would afford Appellant an opportunity to be heard on any such petition prior to ruling. N.T. at 29-30.

At the conclusion of the January 13, 2025, hearing, the trial Court noted Appellant's failure to stay current in his child support payments as well as the Court's credibility determination in its decision to deny Appellant's petitions. Regarding the funds held in escrow pursuant to the non-disbursement order, the trial court stated "that money stays there until [] your arrears are paid in full." *Id.* at 29. After the trial court announced its ruling, Appellant stated "I'm going to have an oral argument for you to recuse yourself then before that Order's entered and that I have till [sic] Friday or Monday to enter a formal recusal," which Appellant styles as a motion for recusal of the trial court. *Id.* The trial court's order denying Appellant's petitions was entered on the court's docket the following day, January 14, 2025.

Despite a marked lack of conformity with the Rules of Appellate Procedure in Appellant's brief, we discern that Appellant intends to raise fourteen questions on appeal. His statement of questions presented incorporates by reference his concise statement of matters complained of on appeal, the relevant section of which claims:

1. The Judge erred as a matter of law by denying Appellant's Petition for Special Relief To Immediately Lift The Non-Disbursement Order From September 25, 2023, for Appellant to access his personal injury settlement.

2. The Judge erred as a matter of law by refusing to lift the non-disbursement order as future punishment for contempt of Appellant by keeping Appellant's personal injury settlement funds as ransom from Appellant, so the Trial Court can use the settlement funds to pay Appellant's future child support payments based upon the Trial Court's belief that Appellant will not pay child support per the child support order in the future.

3. The Judge erred as a matter of law by denying Appellant's in forma pauperis [sic] for the November 18, 2024 and December 6, 2024 notes of testimony.

4. The Judge erred as a matter of law by denying Appellant's Petition for Special Relief To Reinstate Passport.

5. The Judge erred as a matter of law by failing to rule on and enter and [sic] Order regarding Appellant's oral motion for recusal at the January 13, 2025 hearing.

6. The Judge erred as a matter of law by failing to stay the order from the January 13, 2025 hearing until a recusal hearing was scheduled, heard, and ruled upon by the Court.

7. The Judge erred as a matter of law by failing to allow Appellant state [sic] his entire oral recusal motion reasons on the record at the January 13, 2025 hearing.

8. The Judge erred as a matter of law by denying Appellant's due process by stating since the Court previously found Appellant not

- 5 -

credible, the Court will continue to find Appellant not credible and by doing so greatly prejudiced Appellant as the Court denied all of Appellant's Petitions at the January 13, 2024 hearing.

9. The Judge erred as a matter of law by improperly disregarding Appellant's evidence, testimony and witnesses based on pure conjecture regarding 'facts' not in evidence, and factually erroneous interpretations of the evidence and prior rulings.

10. The Judge erred as a matter of law by failing to allow Appellant to admit relevant evidence into the record.

11. The Judge erred as a matter of law by not acting as a neutral arbiter of disputes, but as a prosecutor/ counsel [sic] or advocate for Appellee.

12. The Judge erred as a matter of law by showing he is not impartial to the parties.

13. The Judge erred as a matter of law by allowing Appellee's attorneys to testify.

14. The Judge erred as a matter of law by allowing Appellee's Court appointed Counsel to ask Appellant's witness' irrelevant and inappropriate questions including about Appellant's witness personal finance and information about businesses owned by Appellant's witness despite Appellant's objections at the January 13, 2025 hearing.

Trial Court Opinion 4/4/2025 at 3-4.

Preliminarily, we note that the deficiencies in Appellant's brief preclude meaningful appellate review of several arguments and fragments of arguments contained therein. Although this Court is willing to liberally construe materials filed by a *pro se* litigant, Appellant is not entitled to any particular advantage because he lacks legal training." ***Elliot-Greenleaf, P.C. v. Rothstein***, 255 A.3d 539, 542 (Pa.Super. 2021)(citation omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must,

to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Wilkins v. Marsico***, 903 A.2d 1281, 1284-1285 (Pa.Super. 2006), ***appeal denied***, 918 A.2d 747 (Pa. 2007). Thus, while we endeavor to review what arguments we may discern within Appellant's brief, we are constrained to find that he has waived a great number of the issues enumerated in his concise statement. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020) (citation and bracketed language omitted). ***See*** Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). Furthermore, this Court "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***In re R.D.***, A.3d 657, 674 (Pa. Super. 2012) (citation omitted).

Additionally, as we have previously explained to Appellant:

"Incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. ***See*** Pa.R.A.P. 2119(a) (stating argument must contain analysis and citation to pertinent analysis); ***Franciscus v. Sevdik***, 135 A.3d 1092, 1097 (Pa. Super. 2016) (noting courts do not permit parties to incorporate by reference arguments 'as a substitute for the proper presentation of arguments in the body of the appellate brief')(citation omitted). [***See also***] ***Moranko v. Downs Racing LP***, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (*en banc*) ('It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal')."

***Santo v. Batterman,*** 2720 EDA 2023 (Unpublished Memorandum dated January 15, 2025).[2]

Thus, we find that Appellant has waived his second, ninth, tenth, eleventh, twelfth, and thirteenth issues, as the corresponding sections of his argument cite no legal authority in support of his contentions, and instead they direct this Court to "see [] and incorporate arguments" addressing several separate issues. We will not attempt to assemble coherent arguments for Appellant from what fragments we may find scattered throughout his brief.

We further find that Appellant has waived his fifth issue, where, although he makes several pronouncements of rules which he contends the lower Court violated, he cites to no authority whatsoever in support thereof. Rather, he includes a note which reads "(find caselaw)." In holding with our well-established precedent, we decline to develop Appellant's argument for him and find that this issue has been waived.

Finally, we find that Appellant has waived his sixth, seventh, and eighth issues, where his arguments on those points are comprised of single paragraphs containing no citation to any legal authority or to the record.

_____

[2] Pursuant to Pa.R.A.P. 126(b), we may rely on unpublished memorandum issued after May 1, 2019, for their persuasive value.

What remains are Appellant's first, third, fourth, and fourteenth issues. To the extent we are able to excavate his arguments, we proceed with our review as follows.

In his first issue, Appellant challenges the lower Court's denial of his petition to lift the non-disbursement order issued by the Philadelphia County Court of Common Pleas relative to his personal injury settlement funds. It is well-settled that this Court will review child support orders and orders addressing petitions for special relief under the Domestic Relations Code for abuses of discretion. *See Colonna v. Colonna*, 855 A.2d 648, 652 (Pa. 2004); *Johnson v. Johnson*, 908 A.2d 290, 295 (Pa. Super. 2006).

> "An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings."

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (internal citations and quotation marks omitted).

Here, the section of Appellant's argument corresponding to his first issue spans twenty pages, is not coherently organized, and is largely concerned with relitigating issues addressed in prior appeals, which we decline to revisit. However, we are able to discern two arguments present in this first section of Appellant's brief which cognizably address the issue identified in his concise statement and statement of questions involved.

- 9 -

We distil Appellant's first argument into the following: pursuant to 23 Pa.C.S. §4308.1, only "net proceeds" are subject to liens by operation of law; as the statute defines "net proceeds" as moneys in excess of $5,000.00, the trial Court erred by denying his petition to lift the non-disbursement order, at least as relates to the first $5,000.00 of Appellant's settlement. We find the lower Court's reasoning on this matter sound:

> "The language employed in [23 Pa.C.S. §4305] permits DRS, under court supervision but without the need for a prior court order, to issue a non-disbursement order to intercept a lump sum workers' compensation payment or settlement. [**Coffman v. Klein**, 167 A.3d 772, 779 (Pa. Super. 2017)]; 23 Pa. C.S. § 4305(b)(10)(i) and (ii). Section 4308.1 mandates that the attorney must distribute the net proceeds of a settlement award to a disbursement agency. *Id.*; 23 Pa. C.S.A. § 4308.1 (b). It is those net proceeds alone which are subject to an automatic lien by operation of law. *Id.* Thus, the language contained within these provisions clearly and unambiguously establishes complementary means to achieve the Act's goal of ensuring the collection of support arrears. *Coffman*, 167 A.3d at 780. Under § 4305, DRS may affirmatively act, to ensure the collection of any amount of a settlement. *Id.* Concomitantly, Section 4308.1 only obligates the attorney to disburse any amount in excess of $5,000.00 to the relevant disbursement agency. *Id.*
>
> During the hearing held on January 13, 2025, Father requested lifting the Non-Disbursement Order because the $25,000 purge amount was paid. N.T. 1/ 13/25, p. 7. 6-7. The Non-Disbursement Order was issued due to Father's settlement from a personal injury case. The Order was issued on September 25, 2023, by Philadelphia County by the Honorable Margaret T. Murphy. Attached as Exhibit A is the order. The Order allowed Zurich American Institute Insurance Company to release the settlement funds to the Law Firm of Leonard Sciolla. The Order directed the funds to be held in an escrow account. The total settlement amount was $52,499.00, after attorney fees, cost, and lien by Independence Blue Cross, the net proceeds available to Father are $25,427.78. See Exhibit M-3, Settlement/Distribution Statement from Hearing dated 12/6/24. None of the settlement funds were

- 10 -

to be disbursed to Father without further specific order of the court. By issuing the Non-Disbursement Order, the Philadelphia Court and DRS acted well within its authority. This Court denied Father's Petition to Immediately Lift the Non-Disbursement Order on January 13, 2025, because Father still had substantial arrearages owed."

Trial Court Opinion, 4/4/2025, at 8-9.

We discern no error in the lower Court's analysis, nor any abuse of discretion in their denial of Appellant's petition. Section 4308.1 simply does not apply to the instant case as contemplated by Appellant.

Appellant's second argument relative to his first issue is that the lower Court's finding during the December 6, 2025, contempt hearing that Appellant had access to the funds from his personal injury settlement now obligates the lower Court to lift the order of the Philadelphia County Court of Common Pleas preventing disbursement of those funds. Appellant's Brief at 3. However,

Appellant cites no precedent in support of this argument and as such, we find that it is waived.[3]

Thus, Appellant's first issue merits no relief.

Appellant's third issue challenges the lower Court's denial of his serial petition to proceed *In Forma Pauperis*. We review such denials for abuse of discretion. **D.R.M. v. N.K.M.**, 153 A.3d 348, 350-51 (Pa. Super. 2016). As noted by the lower Court, Appellant "has routinely made the same argument for granting his Petition to Proceed *In Forma Pauperis*," and Appellant "has not had a change in circumstance" since the previous petition in this matter, the denial of which was affirmed by this Court. Trial Court Opinion 4/4/2025 at 15-16; **Santo v. Batterman**, 3258 EDA 2024, 341 A.3d 117 (Pa. Super.

---

[3] To the extent Appellant seeks to litigate the lower Court's having found Appellant in contempt on December 6, 2025, in light of the non-disbursement order, we note that issue is the subject of Appellant's contemporaneous appeal docketed at 3350 EDA 2024, and thus arguments to that issue included in Appellant's instant appeal are inapposite. However, we also note that this Court has very recently affirmed a prior order finding this Appellant in contempt for non-payment of child support, holding that while the regular financial support in the form of gifts and "loans" provided to Appellant by his family do not constitute "income" under 23 Pa.C.S. § 4302, they nevertheless "may be included in determining whether a party can pay child support," and Appellant's refusal to use these funds made available to him by his family to make such payments is sufficient to support a finding that Appellant was in contempt of court for willfully failing to pay child support while able to do so. **Batterman v. Santo**, 469 EDA 2024, 334 A.3d 387 (Pa. Super. filed January 17, 2025)(*citing* **Mencer v. Ruch**, 928 A.2d 294, 297 (Pa. Super. 2007)). As the record below was clear that Appellant still received financial support in the same manner from his family, we discern no reason to revisit the lower Court's December 6, 2025, Order herein.

filed May 21, 2025). We further note that this Court has repeatedly affirmed the denial of *In Forma Pauperis* status to this Appellant by various Courts of Common Pleas. ***See also Santo v. Batterman***, 3136 EDA 2023, 334 A.3d 382, (Pa. Super. filed January 15, 2025); ***Batterman v. Santo***, 967 EDA 2022, 285 A.3d 956 (Table) (Pa. Super. filed September 27, 2022) (unpublished memorandum). After review of the record on appeal, we discern no abuse of discretion or error of law on the part of the lower Court.

Regarding Appellant's fourth issue challenging the lower Court's denial of his petition to reinstate his passport, we find no reason to disturb the decision of the lower Court. Pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act, a state court may suspend an individual's passport for failure to pay child support until such time as the arrears are paid, so long as the court follows the procedure as set forth in the Act. ***See*** 42 U.S.C. § 652(k). Here, the lower Court recounts the circumstances leading to the suspension of Appellant's passport, and the Court's reasoning for denying the petition as follows:

> Father's passport was suspended by the Philadelphia Court of Common Pleas Domestic Relations Division by the Honorable Joel S. Johnson by Order dated April 1, 2022. The Passport was suspended again by Judge Johnson on September 1, 2022. Father's Petition to Reinstate Passport filed on September 29, 2023 was denied by the Honorable. Christopher Mallios by Order dated December 20, 2023. The Philadelphia Orders are attached as Exhibit B. In Bucks County, Father filed a Petition for Special Relief to Reinstate Passport on December 16, 2024. This Court denied his Petition to Reinstate Passport on January 13, 2025.

\*\*\*

By Federal law, Father's passport was suspended for the varying amount of arrears Father owed. At the time of this Court registered the Foreign Support Order from Philadelphia County, Father owed arrears of $28,575.23. By Order dated December 6, 2024, this Court found Father in contempt for willfully failing to pay the court ordered amount and sentenced him to Bucks County Correctional Facility for six months purge amount of $25,000.00. By the time of the hearing on Father's Petition, child support for January 2025 was charged, leaving his payment and APL arrears outstanding. N.T. 1 / 13/25, p. 24. 14-17. Under the Coordinate Jurisdiction Rule, there has not been a substantial change in the facts or evidence between Father's Petition to Reinstate Passport filed in Philadelphia County and this Court to alter the previously decided resolution by the Philadelphia trial judges. The previous denial of Father's Petition to Reinstate Passport was not clearly erroneous. This Court did not abuse its discretion denying Father's Petition for Special Relief to Reinstate Passport. Therefore, our Order dated January 13, 2025 should be affirmed.

Trial Court Opinion 4/4/2025 at 14-15.

We agree. Appellant yet had child support payment in arrears outstanding at the time the lower Court ruled on Appellant's petition; thus, the lower Cout did not abuse its discretion in denying the petition.

Appellant's fourteenth issue challenges the lower Court's overruling his objection to the relevance of questions asked of his mother regarding her finances. We review the same for an abuse of discretion. *Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa. Super. 2020).

Here, Appellant's argument is predicated on his assertion that he did not "ask his mother any questions relating to her businesses['] financial status." Appellant's Brief at 38. This Court finds that Appellant's assertion is belied by a cursory review of the record, as Appellant asked his mother multiple

questions about her finances on direct examination. N.T. Hearing 1/13/2025, at 17-18. Furthermore, Appellant acknowledges that in response to his own questioning, his mother "confirmed that her and her husband cannot afford to pay off the $7,000 placed on Appellant's Father's credit card towards the $25,000 purge," and Appellant acknowledges his mother testified that making this payment placed her and her husband in "financial hardship." Appellant's Brief at 39. Pursuant to Pa.R.E. 607(b), "[t]he credibility of a witness may be impeached by any evidence relevant to that issue." It is thus apparent that counsel's questions regarding the number of businesses owned by the witness and her husband and the amount of revenue those businesses produce were formulated to elicit relevant testimony as relates to Ms. Batterman's credibility. Therefore, this issue is entirely without merit.

For all the foregoing reasons, we affirm the order of the trial Court.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/8/2025